## In re CENTENNIAL INSURANCE ASSOCIATES, INC., Debtor.

### Bankruptcy No. HG 90–80700.

United States Bankruptcy Court, W.D. Michigan.

Oct. 12, 1990.

John W. Callahan, Detroit, Mich., for Centennial Ins. Associates.

John Boyko, Jr. and Michael T. Small, Grand Rapids, Mich., for The Hartford.

Timothy Hillegonds, Grand Rapids, Mich., and Timothy Van Dusen, Troy, Mich., for Commercial Union Ins. Co.

## OPINION ON DISMISSAL OF INVOLUNTARY PETITION

LAURENCE E. HOWARD, Bankruptcy Judge.

## INTRODUCTION

The Debtor, Centennial Insurance Associates, is an insurance agency. On February 16, 1990, an involuntary Chapter 7 bankruptcy petition was filed against the Debtor pursuant to 11 U.S.C. § 303. The petitioning creditors were Commercial Union Insurance Company, Stanley Dickinson, and Elizabeth Dickinson. On March 12, 1990, The Hartford joined the petition pursuant to 11 U.S.C. § 303(c). The Debtor moved to dismiss the involuntary petition based upon a bad faith filing, and a hearing was held on August 8, 1990.

## FACTS

The underlying facts of this case go back to the early 1980s. In 1982, the Debtor redeemed the stock of Stanley Dickinson and Elizabeth Dickinson, and gave each of them a promissory note in the amount of $225,000.00. Commercial Union guaranteed those notes. In 1984, Commercial Union loaned $180,000.00 to the Debtor, and in return the Debtor executed a promissory note to Commercial Union for $174,176.53, which was guaranteed by four of its shareholders. In subsequent years, the Debtor had difficulties meeting its financial obligations. On November 27, 1989, Commercial Union commenced an action in the United States District Court for the Western District of Michigan against the Debtor, four of its shareholders, Stanley Dickinson, and Elizabeth Dickinson. In that action, Commercial Union claimed that the Debtor was in default on the 1984 promissory note, and that the Dickinsons had wrongfully altered the repayment terms on the 1982 promissory notes. The Debtor filed a counterclaim against Commercial Union, asserting that Commercial Union had orally agreed to a restructuring of the Debtor's financial obligations and then subsequently breached that agreement. At the time the involuntary petition was filed, the District Court suit was still in the discovery stage.

Immediately prior to the hearing on the merits of the involuntary petition, Commercial Union and the Debtor settled their dispute. On August 8, 1990, the hearing proceeded with The Hartford and the Dickinsons as the three remaining petitioning creditors. The Debtor challenged the petition on the basis that the original petition was filed in bad faith, as the debt between itself and Commercial Union was the subject of a bona fide dispute. The Debtor argued that if there was a judicial finding that Commercial Union had in fact acted in bad faith, the intervention of The Hartford was meaningless, and the involuntary petition should be dismissed.

At the conclusion of the hearing, I ruled that the debt between Commercial Union and the Debtor was the subject of a bona fide dispute. This holding was based on the existence of the pending District Court action between the parties. Without reaching the ultimate merits of the parties' claims, there was prima facie evidence that the Debtor's counterclaim was not spurious, and that Commercial Union was aware of that fact when it filed the involuntary petition. Thus, I held that Commercial Union had acted in bad faith in filing the involuntary bankruptcy petition. However, I reserved the issue of whether the petition should be dismissed. The parties have submitted briefs on the legal issue of whether the intervention of The Hartford purged the taint of Commercial Union's bad faith, in order to allow the involuntary petition to proceed.

## LEGAL ARGUMENTS

The Hartford argues that the petition should not be dismissed, and sets forth several bases for that argument. First, The Hartford asserts that a dismissal would "punish innocent creditors," and would serve no legitimate purpose because the three remaining creditors could simply refile the case. Second, The Hartford asserts that the Debtor's Motion to Dismiss Involuntary Chapter 7 Proceeding Based Upon Bad Faith Filing was filed after the joinder of The Hartford. Third, The Hartford asserts that since Bankruptcy Rule 1017 requires that any potential dismissal be noticed out to all creditors, a dismissal at this point would be premature. Fourth, The Hartford has referred to the settlement between the Debtor and Commercial Union as "collusive," and argues that a dismissal of the petition would sanction such types of settlements. Finally, The Hartford asserts that preferences have potentially occurred, and it is imperative that a trustee be appointed to recover those for the benefit of all creditors.

The Debtor obviously supports the dismissal of the petition. First, it argues that the three creditor requirement should not be circumvented, because the purpose to be served by a dismissal is to discourage bad faith filings. Second, since no order for relief has been entered in this case as of yet, the Debtor asserts that Bankruptcy

Rule 1017 is inapplicable. Third, the Debtor denies that its settlement with Commercial Union was collusive, but rather, was an equitable resolution of the dispute. Finally, the Debtor asserts that the only potential preference is the subject of a pending lawsuit in the District Court, and will be disposed of by that court.

As a preliminary matter, most of The Hartford's arguments can be disposed of rather easily. Bankruptcy Rule 1017(a) provides that a petition cannot be dismissed prior to a hearing on notice to all creditors in certain situations. The Debtor's motion to dismiss does not fall within any of those situations. Additionally, there is no evidence that the settlement between Commercial Union and the Debtor was collusive, and thus that argument is superfluous. Finally, whether the filing of the motion to dismiss or the joinder of The Hartford occurred first, or whether preferences have occurred is irrelevant if the petition should be dismissed because of Commercial Union's bad faith filing. As a result, the sole legal issue is whether The Hartford may replace Commercial Union as a petitioning creditor to meet the statutory requirements for the filing of an involuntary petition.

## 11 U.S.C. § 303
## INVOLUNTARY PETITIONS

Involuntary bankruptcy petitions are filed under the auspices of 11 U.S.C. § 303. Certain statutory requirements exist, but they vary depending upon the number of creditors and the nature of the business structure of the debtor. In the present case § 303(b)(1) applies, and it states:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

When The Hartford joined in the petition, it did so pursuant to § 303(c), which states:

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

This subsection is particularly significant because it is The Hartford's intervention and its effect on the original petition that is at issue.

## ANALYSIS

The parties have cited numerous cases in support of their opposing positions. Those cases stand for the proposition that when a petition is filed in bad faith, a dismissal is warranted. However, The Hartford argues that the subsequent intervention of a good faith creditor can cure the defect in the petition, and that a dismissal is not necessary.

In the case of *In re Crown Sportswear, Inc.*, 575 F.2d 991 (1st Cir.1978), the First Circuit found that the sole petitioning creditor had not acted in bad faith in asserting that the debtor had fewer than twelve creditors when in fact more than twelve existed, and was therefore permitted to seek additional creditors to join in the petition. *Id.* at 993. The Court stated that "[i]ntervention is a matter of right unless the bankruptcy court finds the petition was made in bad faith for the purpose of improperly invoking its jurisdiction." *Id.* at 993. In the present case, there has been a finding that the petition was filed in bad faith. While the facts are somewhat different, in that the First Circuit was deciding a case where only one creditor had filed the original petition, although three creditors were required, and in the present case, three creditors filed the original petition with a fourth creditor intervening, the

Court's holding is still persuasive. It is clear that the Court would not have permitted any creditors to intervene if the original petition had been filed in bad faith.

In the case of *In re Rite–Cap, Inc.*, 1 B.R. 740 (Bankr.D.R.I.1979), the court found that the sole petitioning creditor had not acted in bad faith in filing the petition, and thus the petition was not dismissed. *Id.* at 743. In that case, because there were fewer than twelve creditors, only one good faith creditor was required to file the petition. *Id.* at 741. However, the debtor raised the issue of a bad faith filing, so another creditor sought to intervene to substitute itself for the petitioning creditor in the event the latter should be found to have acted in bad faith. *Id.* at 741. As to the intervention and potential substitution, the court stated: "An essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the petition was filed in good faith. If the original petition was a sham, prepared with a view of being later supported by intervention of other creditors, joinder should be denied." *Id.* at 741. This case is comparable to the present case, because I am also faced with one good faith creditor who wishes to take the place of a bad faith creditor. The *Rite–Cap* court would not have allowed the intervening creditor to substitute itself for the original petitioning creditor if the latter had acted in bad faith. While there were no other good faith petitioning creditors involved, like the Dickinsons in the present case, I do not see how that factual difference would alter the *Rite–Cap* court's holding. The language in the opinion centered on the substitution of a good faith creditor for a bad faith creditor, not on the existence of other good faith creditors.

Finally, in the case of *Basin Electric Power Cooperative et al. v. Midwest Processing Company*, 769 F.2d 483 (8th Cir. 1985) *cert. denied*, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986), a single creditor filed an involuntary petition, although it knew at the time that the debtor had more than twelve creditors. *Id.* at 485. The debtor moved to dismiss the petition for lack of three creditors, but the bankruptcy judge denied the motion and allowed the creditor to seek additional creditors to join in the petition. *Id.* at 484. Two additional creditors were allowed to intervene, and the judge entered an order for relief. *Id.* at 484. On appeal, the District Court reversed on the basis that the original petition was filed in bad faith and that the subsequent intervention of two creditors did not cure that defect. *Id.* at 484. The Eighth Circuit upheld the District Court's dismissal of the petition, and stated:

> The three creditor requirement is not a meaningless formality that a creditor may ignore until after filing the involuntary petition. While an involuntary petition may be cured after filing when a single creditor files in good faith believing the debtor has fewer than twelve creditors, a single creditor may not file an involuntary petition knowing the debtor has twelve or more creditors.

*Id.* at 486. The Court would not permit the original petitioning creditor, who had acted in bad faith, to remain in the petition with the two intervenors to meet the three creditor requirement. The Eighth Circuit's holding stands for the proposition that the intervention of a subsequent good faith creditor does not remove the taint of an original bad faith petitioning creditor. In the case before me, Commercial Union is no longer a petitioning creditor, and three good faith creditors remain. Nevertheless, the Eighth Circuit's statement rings true: "The three creditor requirement is not a meaningless formality...." *Id.* at 486.

These cases clearly demonstrate that bad faith filings of involuntary petitions are not to be permitted. The impact on a debtor of the filing of an involuntary petition is severe, and should be permitted only when the statutory requirements of 11 U.S.C. § 303 are met. To allow an involuntary petition to proceed otherwise would be judicially irresponsible, and would set a dangerous precedent.

## CONCLUSION

Both parties' arguments are logical; bad faith filings are to be discouraged, yet, three creditors who possess good faith

claims are still present in the litigation. However, even though the dismissal of the involuntary petition may appear to "punish innocent creditors," the policy of discouraging bad faith filings is paramount. The supposition that the three remaining creditors may turn around and refile the case is largely irrelevant. If that occurs, their petition will be judged on its merits. Accordingly, the involuntary petition is to be dismissed, and an appropriate order will be entered.