**In re Kelly G. KIDWELL, Debtor.**

**Bankruptcy No. 92–28334–C–7.**

United States Bankruptcy Court,
E.D. California.

Aug. 25, 1993.

---

William L. Dunbar, Dunbar & Vodonick, Roseville, CA, for debtor.

Raymond P. Burton, Jr., Auburn, CA, for petitioning creditors.

## MEMORANDUM DECISION ON MOTION TO DISMISS INVOLUNTARY PETITION

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

Must the court dismiss an involuntary petition merely because the sole petitioner circumvented the three-petitioner requirement by intentionally misrepresenting the number of creditors even though three other creditors oppose dismissal and demand their statutory right to join in the petition?[1] It is a clash between 11 U.S.C. § 303(b), which requires three petitioners whenever there are at least twelve creditors eligible to petition, and 11 U.S.C. § 303(c), which authorizes eligible creditors to join in the petition after filing with the same effect as if the joining creditor had been one of the initial petitioners. The answer is no, statutory joinder cannot be blocked in order to permit a dismissal that could not occur if joinder were to be permitted.[2]

This conclusion contradicts the bar-to-joinder doctrine (sometimes called the "good faith doctrine") under which courts sometimes block statutory joinder in single creditor petitions because the first petitioner did not file in good faith and then dismiss the case for insufficiency in number of petitioners. The doctrine was dormant until recently exhumed by the Eighth Circuit.

I am now urged to apply that doctrine, which was never universally embraced and which is not binding in the Ninth Circuit. Not only do I decline to apply the doctrine to bar joinder in this case, I suggest that the time has come definitively to scrap it as obsolete, counterproductive, and inconsistent with the 1978 Bankruptcy Code.

Under the Bankruptcy Code, joinder can cure a deficiency in number, even if the first petitioner cheated. Courts now have ample powers for dealing with bad actors without having to throw a meritorious case out of court, i.e. dismissing a case deserving of an order for relief on the merits. The question of dismissing an involuntary bankruptcy case is independent of the matter of joinder. The case may still be dismissed if appropriate, but it should be only after pending joinder requests are addressed and not *solely* because of the initial petitioner's putative misbehavior.

### FACTS

This involuntary chapter 7 case was commenced when one creditor ("Jones") filed a petition on Official Form No. 5 alleging (by checking applicable boxes) that she is eligible to file the petition pursuant to section 303(b), that the debtor is a person against whom relief may be ordered, and that the debtor is generally not paying debts as they become due. She further alleged that her claim is approximately $47,000. Jones and her counsel signed the petition.

The debtor moved to dismiss under Federal Rule of Civil Procedure 12 alleging Jones' lack of good faith in impliedly asserting that there are fewer than twelve creditors eligible to petition. This is important because three creditors are necessary to commence an involuntary case when there are at least twelve creditors eligible to petition. 11 U.S.C. § 303(b).

Six other creditors, whose claims ($62,214) are sufficient to have permitted them to file their own involuntary petition, filed motions to join in the petition as of right pursuant to the involuntary petition joinder statute. 11 U.S.C. § 303(c).

The debtor invoked the bar-to-joinder doctrine to assert that the court could not act on motions to join until after ruling on the debtor's motion to dismiss.

---

**1.** In the interest of preserving reputations, the truth of the assertion that the petitioner lied is merely assumed.

**2.** I ruled from the bench. This Memorandum Decision explains my ruling.

## DISCUSSION

The bar-to-joinder doctrine functions as a tactical device to short-circuit the statutory power of creditors to cure a deficiency in number of petitioners by joining in the involuntary petition.

Although punctuated by squawks about the initial petitioner's evil motives and sometimes called the good faith doctrine, the salient point is that the debtor in a case launched by too few creditors wants to preempt statutory joinder and then have the case dismissed for having an insufficient number of petitioners. Creditors who are barred from joinder through no fault of their own are told to go file another petition if they want to press an involuntary bankruptcy. As a result, in a case that genuinely should be in bankruptcy, the debtor is permitted to manipulate the date of the filing of the petition and frustrate potential avoiding actions.

Assessing the continuing vitality of the bar-to-joinder doctrine, which is commonly said to have had its origin in *Myron M. Navison Shoe Co. v. Lane Shoe Co.*, 36 F.2d 454 (1st Cir.1929), and which was essentially moribund until the decisions in *Basin Electric Power Co–Op v. Midwest Processing Co.*, 769 F.2d 483 (8th Cir.1985), *aff'g* 47 B.R. 903 (D.N.D.1984), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986), in light of the evolution of statute and rules since 1929, begins with a review of the substantive defense to which the doctrine relates.

1. *Defense of Insufficiency in Number of Petitioning Creditors.*

The bar-to-joinder doctrine arises in the context of the substantive defense that the involuntary petition was not filed by the minimum number of eligible petitioning creditors required by the statute. At least three qualifying creditors must file the petition unless there are fewer than twelve such creditors in which case a single petitioner may file.[3]

a. *Elements of the Defense.*

The defense, which often is coupled with an attack on the eligibility of particular creditors to be petitioners, has two essential elements: first, that three qualified petitioners did not sign the petition; second, that more than eleven creditors qualify.

b. *Nature of the Defense.*

 Failure to comply with the three-petitioner requirement is a substantive, not a jurisdictional, defense. The filing of a petition sufficient on its face, containing the essential allegations, invokes the subject matter jurisdiction of the bankruptcy court. *Canute Steamship Co., Ltd. v. Pittsburgh & West Virginia Coal Co.*, 263 U.S. 244, 248, 44 S.Ct. 67, 68, 68 L.Ed. 287 (1923);[4] *Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1318–19 (9th Cir. 1983); *Dunlop Tire & Rubber Corp. v. Earl's Tire Serv., Inc. (In re Earl's Tire*

---

**3.** Subsections 303(b)(1) and (2) specify how an involuntary case is commenced:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapters 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549,

or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims.

11 U.S.C. §§ 303(b)(1) and (2). The language excluding holders of claims in bona fide dispute from eligibility to petition was added in 1984.

**4.** As the Supreme Court noted in a case under the former Bankruptcy Act:

> [T]he filing of a petition, sufficient upon its face, by three petitioners alleging that they are creditors holding provable claims of the requisite amount, the insolvency of the defendant and the commission of an act of bankruptcy within the preceding four months, clearly gives the bankruptcy court jurisdiction of the proceeding.

*Canute Steamship*, 263 U.S. at 248, 44 S.Ct. at 68.

*Serv., Inc.),* 6 B.R. 1019, 1022–23 (D.Del. 1980); *In re Alta Title Co.,* 55 B.R. 133, 137 (Bankr.D.Utah 1985); 2 L. King, *Collier on Bankruptcy* ¶ 303.15[6] (1992).

■ As a substantive defense, a defect in the three-petitioner requirement is waived if not timely raised. *Mason,* 709 F.2d at 1318–19; *Earl's Tire Serv.,* 6 B.R. at 1023; *Alta Title,* 55 B.R. at 137.

This has been understood for at least seventy years:. "it is indispensable to the maintenance of the petition that the existence of three petitioners holding provable claims be established, *if challenged." Canute Steamship,* 263 U.S. at 248, 44 S.Ct. at 68 (emphasis .added).[5]

■ A petition on Official Form No. 5 is regular on its face if the boxes next to the preprinted essential allegations are checked and if the form is otherwise correctly completed.

c. *Procedure for Raising the Defense.*

Whether the defense of insufficiency in number of petitioners may be raised by a Federal Rule of Civil Procedure 12(b)(6) motion is muddled by a gap in the rules of procedure. Defenses to involuntary petitions are "presented in the manner prescribed by Rule 12," which ordinarily means by answer or by motion. Fed. R.Bankr.P. 1011(b). The gap is created by another rule prescribing a specific procedure, mandating notice to creditors and opportunity to join in the petition, that is to be followed when the defense of insufficiency in number of petitioners is raised in the answer to a petition filed by fewer than three creditors.[6] Fed.R.Bankr.P. 1003(b). Can the same defense be raised by motion? Can other forms of the defense (e.g., the third petitioner was ineligible to petition) be raised by motion? The rules are silent.

■ The better answer is that a Rule 12(b) motion is a permissible way to raise the substantive defense. Indeed, commentators ignore the gap and assert, ipse dixit, that the defense may be raised by motion. *E.g.,* 2 L. King, *Collier on Bankruptcy* ¶ 303.33 (1992). Among Rule 12(b) motions, only Rule 12(b)(6) fits. Although arguably not within the motions enumerated at Rule 12(b), the defense is analogous to a challenge to a plaintiff's capacity to sue, which is usually permitted to be made under Rule 12(b)(6). 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1360 (1992); *cf. Patee v. Pacific Northwest Bell Tel. Co.,* 803 F.2d 476, 478 (9th Cir.1986).

■ What of the requirement for a list of creditors and an opportunity to allow other creditors to join when debtor challenges the petitioner's assertion that there are fewer than twelve creditors? The rules make the procedure mandatory if the defense is raised in the answer but are silent about what to do if raised by motion. Fed.

---

**5.** Courts of appeals routinely applied this rule under the Bankruptcy Act of 1898. *E.g., Harris v. Capehart–Farnsworth Corp.,* 225 F.2d 268, 270 (8th Cir.1955); *General Kontrolar Co. v. Allen,* 124 F.2d 123, 127 (6th Cir.1941); *In re National Republic Co.,* 109 F.2d 167, 170 (7th Cir.), *cert. denied,* 309 U.S. 671, 60 S.Ct. 614, 84 L.Ed. 1017 (1940).

**6.** Federal Rule of Bankruptcy Procedure 1003(b), Joinder of Petitioners After Filing, provides:

If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

Fed.R.Bankr.P. 1003(b).

This merely restates, with updated terminology, former Bankruptcy Rule 104(e) that became effective October 1, 1973:

*(e) Joinder of Petitioners After Filing.* Creditors other than the original petitioners may join in an involuntary petition at any time before its dismissal. If the answer to an involuntary petition filed by one or 2 creditors avers the existence of 12 or more creditors, the alleged bankrupt shall file with the answer a list of all his creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as counted under § 59e of the Act, the court shall thereupon afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

Bankr.R. 104(e).

R.Bankr.P. 1003(b). The sensible solution is for the court to exercise its discretion to impose the same procedure when the defense is raised by motion. Once again, commentators merely overlook the gap and assert that the procedure applies in both instances. 2 L. King, *Collier on Bankruptcy* ¶ 303.33 (1992).

■■■■ Although permitted, a Rule 12(b)(6) motion is not ordinarily an efficient way to raise the defense. Except in clear-cut situations, ruling is generally better postponed until trial. As the motion is always premised on evidence from outside the pleadings, summary judgment standards are implicated. The evidence usually overlaps other issues on the merits, such as whether debts are being paid as they come due and which debts are in bona fide dispute. When evidence pertinent to a Rule 12(b)(6) motion is substantially interwoven with the merits, courts exercise their discretion to defer ruling unless a preliminary hearing would conserve time, expense, and judicial resources. Fed.R.Civ.P. 12(d); 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1373 (1992).

■■■■ The need to defer ruling until trial except in clear-cut instances means that the choice between raising the defense by motion or in the answer has little effect upon how it will be resolved. No bypass of the procedure for listing and notifying creditors to permit joinder should be permitted. The motion's primary impact, then, would be to extend the time to file an answer to the petition until ten days after the motion is denied or postponed. Fed.R.Civ.P. 12(a); Fed.R.Bankr.P. 1011(c). Such extensions of time run counter to the premise that a prompt determination of whether a bankruptcy case is to proceed is needed and thus should be viewed with caution.

### 2. *Statutory Joinder Moots the Defense.*

The Congress has provided that the defense of insufficient petitioners can be easily mooted. This is a manifestation of the policy that meritorious involuntary bankruptcies should not be unduly delayed by technical defenses.

### a. *Statutory Joinder.*

The statute provides that other creditors with noncontingent claims may join in the petition and may do so before the case is dismissed or relief is ordered.[7] 11 U.S.C. § 303(c). A similar joinder provision was in the former Bankruptcy Act. The Bankruptcy Code added that joinder is "with the same effect as if such joining creditor were a petitioning creditor." *Id.* As discussed below, this new language came in the context of a comprehensive overhaul that was designed to make it easier to launch involuntary cases and that has significant implications for the bar-to-joinder doctrine.

■■■■ The Congress placed no restrictions on joinder in section 303(c). The sole statutory qualification for joining is that the creditor must hold a nonexempt unsecured claim. The rules of procedure add an antigerrymandering qualification, carried forward from prior law with congressional blessing, that interprets the word "creditor" to exclude one who has transferred or acquired a claim for the purpose

---

7. Section 303(c) permits joinder in the petition:
 (c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.
 11 U.S.C. § 303(c).
 This provision is descended from section 59(f) of the Bankruptcy Act of 1898. Before 1938, that section provided:

 f. Creditors other than original petitioners may at any time enter their appearance and join in the petition, or file an answer and be heard in opposition to the prayer of the petition.
Bankr.Act § 59(f).
 After 1938, section 59(f) provided:
 f. Creditors other than the original petitioners may at any time enter their appearance and join in the petition.
Bankr.Act § 59(f).

of commencing a case. Fed.R.Bankr.P. 1003(a).[8]

 Joinder is a matter of right. It was a matter of right under the 1898 Bankruptcy Act, and it is a matter of right under the 1978 Bankruptcy Code. *See Luse–Stevenson Co. v. Acord Ventilating Co. (In re Acord Ventilating Co.)*, 221 F.2d 899, 901 (7th Cir.1955).[9] The straightforward language of the statute permits any number of qualifying creditors to sign onto the petition and be treated as if they had signed the petition before it was filed. Nothing suggests that the courts are authorized to interpose conditions upon joinder by qualifying creditors. The language of the statute and rules indicates that the court's sole inquiry on a motion to intervene under section 303(c) is whether the intervening creditor is qualified to intervene.

b. *Need for a Joinder Provision.*

If involuntary bankruptcy is to be an effective procedure, a joinder provision is essential to assure that meritorious cases are not stalled by artificial roadblocks. The uncomplicated joinder provision at section 303(c) accommodates two realities.

 First, it is not always easy to determine whether three petitioners are needed or whether particular petitioners are eligible. There are a number of potentially necessary inquiries, all of which are intensely factual. For example, determining the number and amount of unsecured claims that are not contingent as to liability, the claims that are in bona fide dispute, the claims that are held by transferees of preferences or other voidable transfers,[10] and the claims that are held by insiders are all issues suggested on the face of the statute. 11 U.S.C. § 303(b). Another factual inquiry is necessitated by the rules of procedure, which exclude claims transferred or acquired for the purpose of filing an involuntary bankruptcy. Fed. R.Bankr.P. 1003(a).[11] Or one may be es-

**8.** This rule perpetuates the provisions of settled cases under the Bankruptcy Act as recognized in former Bankruptcy Rule 104(d) and provides:

*(a) Transferor or Transferee of Claim.* A transferor or transferee of a claim shall annex to the original and each copy of the petition a copy of all documents evidencing the transfer, whether transferred unconditionally, for security, or otherwise, and a signed statement that the claim was not transferred for the purpose of commencing the case and setting forth the consideration for and terms of the transfer. An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.

Fed.R.Bankr.P. 1003(a).

The legislative history of the three-petitioner portion of 11 U.S.C. § 303(b)(1), from each branch of the Congress, includes the observation that:

This subsection is not intended to overrule Bankruptcy Rule 104(d), which places certain restrictions on the transfer of claim for the purpose of commencing an involuntary case. That Rule will be continued under section 405(d) of this bill.

H.Rep. No. 95–595, 95th Cong., 1st Sess. at 324 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. at 33 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5819, 6280.

**9.** The leading treatise explicating the 1898 Bankruptcy Act put it this way:

The creditor's right to intervene, within the proper time, is not subject to the court's discretion. Intervention to join in the petition, as a general rule, is a matter of right.

3 J. Moore & L. King, *Collier on Bankruptcy* ¶ 59.30 at 645 (14th ed. 1977) (footnotes cataloging cases omitted).

**10.** This limitation on eligibility can have dramatic impact. Dozens, even hundreds, of bona fide creditors may have accepted late payments in the preference period. 11 U.S.C. § 303(b)(2).

**11.** Rule 1003(a) adds one limitation on eligibility to be a petitioner:

An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.

Fed.R.Bankr.P. 1003(a).

This clarifies the continuing vitality of the same provision that appeared in the former Bankruptcy Rules, as indicated by the committee reports from both Senate and House of Representatives:

[Section 303(b)] is not intended to overrule Bankruptcy Rule 104(d), which places certain restrictions on the transfer of claims for the purpose of commencing an involuntary case.

H.Rep. No. 95–595, 95th Cong., 1st Sess. at 322 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. at 33 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5819, 6279.

topped from being a petitioner by virtue of its conduct. *See* 2 L. King, *Collier on Bankruptcy* ¶¶ 303.23(8) and (14) (1992).

Second, time is of the essence. If there is a meritorious case for bankruptcy, the process of gathering assets is more efficacious the sooner relief is ordered. Conversely, a debtor who does not belong in bankruptcy deserves to be out of the case sooner than later.

Diversions designed to forestall the inevitable are discouraged. Proper respect for the serious consequences of bankruptcy and for the legitimate interests of all parties, debtor and creditors alike, demands prompt resolution of the matter on the merits. Everybody needs to know whether there is to be a bankruptcy or not. When sufficient eligible creditors wish to join in the petition, there is little point in encumbering the litigation with disputations about the virtue or qualifications of the initial petitioners. Uncomplicated joinder facilitates the policy of achieving prompt determination on the merits.

c. *Procedure for Accomplishing Joinder.*

 Federal Rule of Civil Procedure 24(a)(1) governs the procedure for joinder. The right to join in an involuntary petition is an unconditional right to intervene conferred by a statute of the United States within the meaning of Rule 24(a)(1). That rule is made applicable to involuntary petitions by the Federal Rules of Bankruptcy Procedure. Fed.R.Bank.P. 1018 and 7024.

Although the practice is to file a motion to join as a petitioner, the motion is actually a motion to intervene as a petitioner. Fed.R.Civ.P. 24(c). So long as the movant is a bona fide creditor holding a noncontingent unsecured claim that is not contingent, the motion to intervene as a petitioner cannot be denied. *See Acord Ventilating Co.*, 221 F.2d at 901 (Bankruptcy Act).

3. *Evolution of Statutory Joinder from Bankruptcy Act to Bankruptcy Code.*

 The joinder provision in the Bankruptcy Act of 1898, which was silent on the point, was early interpreted to mean that a deficiency in number occasioned by the ineligibility of one of the three petitioners is retroactively cured by subsequent joinder of additional petitioning creditors, so long as the petition is sufficient on its face. *Canute Steamship*, 263 U.S. at 249, 44 S.Ct. at 68 (Bankr. Act § 59f).[12] In *Canute Steamship*, which remains the Supreme Court's latest word on the subject, the motives of the ineligible petitioner were deemed immaterial once there was joinder, but the effect of joinder in a petition not sufficient on its face was expressly left open. *Id.* at 250, 44 S.Ct. at 69.

The Bankruptcy Code's joinder provision changed in two respects that did not undermine *Canute Steamship*. First, the time for joinder was changed from "at any time" to "after the filing of a petition under this section but before the case is dismissed or relief is ordered." Second, the former silence was replaced with specification that joinder be "with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section." 11 U.S.C. § 303(c).

This new joinder provision came in the context of a general overhaul of involuntary bankruptcies that relaxed the stan-

---

**12.** The holding was:

[O]ther creditors thus joining in the original petition necessarily acquire the status of petitioning creditors as of the date on which the original petition was filed, and may thereafter avail themselves of its allegation, including those relating to the commission of the act of bankruptcy, as fully as if they had been original petitioners.

We therefor conclude that where a petition for involuntary bankruptcy is sufficient on its face, alleging that the three petitioners are creditors holding provable claims and con-

taining all the averments essential to its maintenance, other creditors having provable claims who intervene in the proceeding and join in the petition at any time during its pendency before an adjudication is made, after as well as before the expiration of four months from the alleged act of bankruptcy, are to be counted at the hearing in determining whether there are three petitioning creditors qualified to maintain the petition originally or by intervention.

*Canute Steamship Co.*, 263 U.S. at 249, 44 S.Ct. at 68 (Bankr.Act § 59f).

dards for instituting them, balanced by new costs imposed upon unsuccessful petitioners. Eligibility to petition was expanded to include, for example, partners and indenture trustees. 11 U.S.C. § 303(b). Acts of bankruptcy, proof of which was essential and tricky, were abolished. An equity insolvency test (not paying debts as they become due) replaced the more restrictive balance sheet insolvency test so that involuntary cases could be brought in an earlier stage in an entity's economic decline. 11 U.S.C. § 303(h).

Monetary remedies against unsuccessful petitioners counterbalance this new liberality. Dismissal of a petition exposed all petitioners to new statutory remedies of attorney's fees and exposed bad faith petitioners to actual and punitive damages.[13] 11 U.S.C. § 303(i). And the court was given authority to require petitioners to file a bond to indemnify for awards under the new costs and damages remedies. 11 U.S.C. § 303(e). In other words, the operative principle was that one who swats at the hornet had best kill it.

In the context of the liberalization of involuntary bankruptcy, the revised joinder provision was more than a mere restatement of *Canute Steamship*. Since it was now to be even easier to launch a successful involuntary case, it follows that curing defects in the petition was to be easier as well.

### 4. The Bar–to–Joinder Doctrine.

The bar-to-joinder doctrine had a curious evolution. It began six years after *Canute*

*Steamship* in dictum in a First Circuit single petitioner case in which nobody requested joinder. *Navison Shoe*, 36 F.2d at 454.

The First Circuit held that it was error to disqualify all but eight of Navison's twenty-nine creditors who existed on the date of filing, notwithstanding that Navison paid off most of the others post-petition and acquired their claims by assignment. Specifically, the court held that, for purposes of the three-petitioner requirement, the measuring date for determining the number of creditors eligible to petition is the date of filing the petition. This holding doomed the involuntary case to dismissal because Navison's stratagem of paying the other creditors preempted Lane Shoe, the sole petitioner, from rounding up two other creditors to join in the petition.

Then, in pure dictum, taking umbrage at Lane Shoe's false allegation that there were fewer than twelve creditors, the court observed that the false pleading, which it characterized as "a fraudulent attempt to confer jurisdiction upon the court where none existed," was a further ground for dismissal. This dictum, in context, stands as one court's manifesto that it is not to be trifled with.[14]

The Achilles Heel in the *Navison Shoe* dictum is that it contradicted the Supreme Court's conclusion in *Canute Steamship* that a petition sufficient upon its face "clearly gives the bankruptcy court juris-

---

**13.** Costs had long been available to a debtor who successfully resisted an involuntary petition. General Order in Bankruptcy No. 34, 172 U.S. 664–65 (1898).

**14.** The court's displeasure was evident:
There is, however, a further ground upon which we think the creditor's petition should be dismissed, and that is, that the conclusion to be drawn from the primary facts found by the master is clear—that the Lane Shoe Company, on November 10, 1928, when it filed the petition, in which it alleged that the creditors of the Navison Shoe Company, Inc., were less than twelve, did so knowing that the allegation was false; or did so recklessly not caring whether the allegation, which it affirmed as of its own knowledge to be true, was true or false, and, being false, its conduct was a

fraudulent attempt to confer jurisdiction on the court, where none existed.
. . . .
It is incredible that the petitioner did not believe the information that had ... been given it, or, having such information, did not suspect what it affirmed in its petition to be true was false, in which event its conduct would be fraudulent, for one cannot affirm as of his own knowledge a thing to be true, intending it to be relied upon, if he suspects it to be false, without being guilty of fraud. A person who suspects his statement is false does not entertain an honest belief it is true, or is consciously and wickedly indifferent to its truth or falsity.
*Navison Shoe*, 36 F.2d at 459 (citation omitted).

**214**

diction of the proceeding." *Canute Steamship*, 263 U.S. at 248, 44 S.Ct. at 68. Lane Shoe's allegations may have been lies, even damnable lies, but its petition against Navison Shoe was sufficient upon its face and conferred jurisdiction upon the court. Thus, the theoretical underpinnings of the *Navison Shoe* dictum that jurisdiction was lacking were suspect from the outset.

The *Navison Shoe* dictum was noted by Professor Moore in *Collier on Bankruptcy* as a potential limit on joinder.[15] The dictum had a nice ring to it, had an intuitive appeal that was hardly controversial, and prompted the type of academic observation that appears in treatises. Nobody favors fraud on the court.[16] Everyone favors good faith.[17]

The subsequent history of the development of bar-to-joinder has been comprehensively chronicled in *Alta Title* and need not be repeated here. The salient point is that the *Navison Shoe* dictum was oft-repeated, primarily because it sounded good and appeared in a leading treatise, but rarely applied. The doctrine was so shallow that no reported decision of the First Circuit applies *Navison Shoe*, its own case, to prevent a creditor from joining a petition.[18]

Most courts have honored the doctrine only by lip service. They acknowledge its existence, note the confusion it has engen-

dered, observe that good faith is presumed, note that there is disagreement over whether the test is objective or subjective, and then decline to apply it under the particular facts of the case. *E.g., Alta Title*, 55 B.R. at 133.

The bar-to-joinder doctrine, however, occasionally crops up in virulent form. Two leading examples are *Basin Electric*, 769 F.2d at 483, and *In re Centennial Ins. Assoc., Inc.*, 119 B.R. 543 (Bankr. W.D.Mich.1990).

The *Basin Electric* decisions were consecutive appellate decisions by a district court and by the Eighth Circuit. The involuntary case was filed by a single petitioner with a $300,000 disputed claim, who subsequently enlisted joinder by two other creditors who were owed a total of $296.97. The debtor and the other creditors, who held $45 million in claims, opposed bankruptcy relief as not in their interests. The bankruptcy court rejected their views and ordered relief.

The appellate courts reversed, invoking the bar-to-joinder doctrine. They reasoned that the three-petitioner requirement of section 303(b) trumped the statutory joinder provision of section 303(c), using the bar-to-joinder doctrine as the tool for reversal of the order for relief.[19] Both the dis-

**15.** The fourteenth edition of *Collier* put it this way:

> Implicit, rather, is the suggestion that where a petition upon its face shows the proper number of creditors and the necessary claims, the good faith and honesty of the petitioners will be presumed and that the burden of showing the fraud must rest upon the bankrupt or any other party opposing the petition. But where fraud is affirmatively established, the courts, as suggested, should not permit intervention. Thus, in *Myron M. Navison Shoe Co., Inc. v. Lane Shoe Co.*, a single creditor filed a petition, alleging that the bankrupt's creditors were less than twelve. The court found the creditor knew at the time the petition was filed that the allegation was false and dismissed the petition on the ground that "such conduct was a fraudulent attempt to confer jurisdiction upon the court, where none existed." Though the problem of intervention was not involved in the *Navison* case, it is indicated that the ground for the court's dismissal would also bar creditors from intervening, since intervention should not be allowed to

support a petition which improperly and fraudulently sought the jurisdiction of the bankruptcy court.

3 J. Moore & L. King, *Collier on Bankruptcy* ¶ 59.30, at 648–49 (14th ed. 1977).

**16.** *See, e.g., Official Committee of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715 (Bankr.E.D.Cal.1992).

**17.** *See, e.g., Chambers v. Marathon Home Loans (In re Marathon Home Loans)*, 101 B.R. 216 (Bankr.E.D.Cal.1989).

**18.** Most important for purposes of this opinion, the Ninth Circuit is one of the circuits that has neither adopted nor rejected the bar-to-joinder doctrine.

**19.** While an involuntary petition may be cured after filing when a single creditor files in good faith believing the debtor has fewer than twelve creditors, a single creditor may not file an involuntary petition knowing the debtor has twelve or more creditors.

trict court and the Eighth Circuit, ignoring *Canute Steamship*, viewed the violation of section 303(b) as a jurisdictional defeat. The problem with that rationale is that *Canute Steamship* is still good law and dictates the contrary conclusion.

The irony is that *Basin Electric*'s order for relief was suitable for reversal without reference to the joinder question. There were two independent reasons for requiring that the bankruptcy case be dismissed.

First, the order for relief should have been reversed by either the district court or the Eighth Circuit, because during the pendency of the case, the Congress had stripped the initial petitioner, whose claim was disputed, of eligibility to petition. Specifically, before either of the *Basin Electric* appeals were decided, the Congress amended section 303(b) to disqualify any person holding a disputed claim and made the amendment effective upon enactment.[20] If the law as amended had been applied, the *Basin Electric* petition would have had to be dismissed for having only two eligible petitioners holding unsecured claims ($296.97) less than the statutory minimum of $5,000.

■■■ A court must apply the law in effect at the time that it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. *Bradley v. School Board of Richmond*, 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801); *cf. Harper v. Virginia Dep't of Taxation*, —— U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (controlling interpretation of federal law). Here, that amendment to section 303(b) was expressly singled out by the Congress to be effective immediately upon enactment.

Second, even if section 303(b) had not been amended to disqualify the petitioner, there was another reason that the district court (but not the court of appeals) could have reached the result it desired. The circumstances presented an ideal case for section 305 abstention on the basis that the best interests of creditors and the debtor would not be served by bankruptcy. 11 U.S.C. § 305. In order to do so, the district court, on its own motion, could have withdrawn the reference of the case to the bankruptcy court and dismissed the case pursuant to section 305. 28 U.S.C. § 157(d).[21] It is apparent that the court thought continuation of the bankruptcy court would be unjust.

By ignoring applicable law that permitted (section 305 abstention) or compelled (amended section 303(b)) the desired result, the *Basin Electric* courts worked mischief by seeming to breathe new life into the bar-to-joinder doctrine.

The doctrine then reared its head in *Centennial Insurance* to justify refusal to permit an eligible creditor to join in a petition filed by three creditors where one of the three initial petitioners was ineligible and was regarded as having acted in bad faith. The joinder would have saved the petition.

---

*Basin Electric*, 769 F.2d at 486.

Section 303(c) may properly be invoked where a single creditor is unaware that a debtor has twelve or more creditors. But where, as in this case, a single creditor commences an involuntary case despite his knowledge that a debtor has twelve or more creditors, the petition is deficient and should be dismissed absent special circumstances. *Basin Electric*, 47 B.R. at 908.

**20.** Pub.L. 98–353, Title III, 98 Stat. 333, 352 (July 10, 1984).

The amendment to section 303(b) was accomplished by section 426(b) of that Act. *Id.*, § 426(b), 98 Stat. 369.

It was singled out for immediate effect by section 553 of that Act:

(a) Except as otherwise provided in this section the amendments made by this title shall become effective to cases filed 90 days after the date of enactment of this Act.

(b) The amendments made by section 426(b) shall become effective upon the date of enactment of this Act.

*Id.* at 98 Stat. 392.

**21.** The district court's decision was rendered after enactment of section 157(d) as part of the legislation reconstituting bankruptcy courts as units of the district courts. Pub.L. 98–353, Title I, § 104(a), 98 Stat. 336 (1984).

Expressly relying upon *Basin Electric* and ignoring *Canute Steamship* to rationalize dismissal, the bankruptcy court said, "to proceed otherwise would be judicially irresponsible, and would set a dangerous precedent." *Centennial Insurance*, 119 B.R. at 546. The two surviving initial petitioners and the joining creditors were told to go file a new involuntary petition. In the view of the court, "the policy of discouraging bad faith filings is paramount" over section 303(c). *Id.* at 547.

Neither the *Basin Electric* court nor the *Centennial Insurance* court considered alternatives to barring joinder.

As the bar-to-joinder doctrine has not been adopted in the Ninth Circuit, I remain free to determine its viability in cases before me. Accordingly, the precedential effect of those decisions is limited to their persuasive value and entitlement to respect. With all respect, they are just not persuasive.

### 5. *Imbalance Reflected by Bar-to-Joinder Doctrine.*

The bar-to-joinder doctrine produces unsatisfactory results in cases that deserve being in involuntary bankruptcy.

When legitimate creditors are trying to exercise their statutory right to join in the petition in a case that really should be an involuntary bankruptcy, barring them from joining and telling them to go file their own petition strikes a balance that favors a debtor who is trying to stall. A new case will leave a later filing date. Avoiding actions for fraudulent transfers, preferences, and similar items may slip away because of the later filing date.

The question becomes whether suitable devices for chastising blameworthy petitioners exist without punishing blameless intervenors in cases that really do belong in involuntary bankruptcy.

### 6. *Alternatives to Barring Joinder.*

Developments since the time of *Navison Shoe* have afforded courts added flexibility in dealing with deceitful petitioners. There is now statutory authority to make awards against those who file unsuccessful involuntary cases, including consequential and punitive damages from those who file in bad faith. And the rules, including bankruptcy's version of Rule 11, have refined the court's sanctioning authority.

### a. *Costs and Attorney's Fees Per 11 U.S.C. § 303(i)(1).*

■ In conjunction with relaxing the standards for filing involuntary cases under the new Bankruptcy Code, the Congress simultaneously made it expensive for petitioners and intervenors who fail in attempting to bring an involuntary case. If an involuntary petition is dismissed other than on the consent of the debtor and all petitioners, the petitioners may be required to pay the debtor's costs and attorney's fees. 11 U.S.C. § 303(i)(1). All petitioners, even those who have joined under section 303(c), are vulnerable to this remedy that arises upon dismissal of the case.

■ There are only two charted safe harbors from the section 303(i) remedies: (1) dismissal with consent of the debtor and of all petitioners and (2) waiver by the debtor of the right to judgment. 11 U.S.C. § 303(i). All other dismissals are exposed to section 303(i) remedies, including, for example, dismissal pursuant to section 305 abstention based on the interests of creditors and the debtor being better served by dismissal. *In re Trina Assoc.*, 128 B.R. 858, 873 (Bankr.E.D.N.Y.1991).[22] Even a

---

**22.** Some early decisions under the Bankruptcy Code incorrectly held that section 303(i) is, as a matter of law, inapplicable to dismissals under section 305, which has led some treatise writers to make the same assertion. *In re Luftek*, 6 B.R. 539 (Bankr.E.D.N.Y.1980); *In re Sun World Broadcasters, Inc.*, 5 B.R. 719 (Bankr.M.D.Fla. 1980); 2 L. King, *Collier on Bankruptcy* ¶ 303.40 at 303–141 (15th ed. 1993); 1 D. Epstein, S.

Nickles & J. White, *Bankruptcy* § 2–5g at 35 (1992). However, this contradicts the plain language of the statute. The correct view is that section 303(i) *does* apply to dismissals under section 305 and that the court, on a case by case basis, must exercise its discretion. *Trina Associates*, 128 B.R. at 873.

One intended purpose of section 305 is to provide a basis for dismissing a case filed by the

dismissal following entry of an order for relief may occasion liability.

■■■■ The Congress drafted the statute to make an award of costs and fees the norm. While the better view is that such awards are discretionary and not mandatory, courts exercise their discretion in light of two factors. First, the progenitor of section 303(i)(1) is former Bankruptcy Rule 115(e), which makes such awards "routine." Second, the statute makes plain that bad faith is not relevant unless consequential and punitive damages are under consideration. *In re Kearney*, 121 B.R. 642, 644–45 (Bankr.M.D.Fla.1990); *In re Anderson*, 95 B.R. 703, 704–05 (Bankr.W.D.Mo.1989); *In re Johnston Hawks, Ltd.*, 72 B.R. 361, 365 (Bankr.D.Haw.1987), *aff'd*, 885 F.2d 875 (9th Cir.1989). Thus, any petitioning creditor in an involuntary case, whether signing the initial petition or later joining as a petitioner under section 303(c), should expect to pay the debtor's attorney's fees and costs if the petition is dismissed.

### b. *Consequential and Punitive Damages Per 11 U.S.C. § 303(i)(2).*

■■■■ Any petitioner who files in bad faith may be required to pay "any damages proximately caused by such filing," 11 U.S.C. § 303(i)(2)(A), together with punitive damages. 11 U.S.C. § 303(i)(2)(B). Whether bad faith is determined by a subjective or an objective test has been debated. *See, e.g., In re Fox Island Square Partnership*, 106 B.R. 962, 967–68 (Bankr.N.D.Ill.1989). Under all approaches, however, a materially false statement in support of an involuntary petition constitutes bad faith for purposes of section 303(i)(2). *E.g., Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*, 61 B.R. 614, 620 (Bankr. 9th Cir.1986) (false representation re authority to act); *Kearney*, 121 B.R. at 642 (falsely claiming to be

creditor and falsely claiming debtor had fewer than twelve creditors); *Johnston Hawks*, 72 B.R. at 361 (falsely asserting claim not subject to bona fide dispute).

■■■■ Thus, a petitioning creditor who falsely asserts that there are not twelve qualifying creditors risks consequential and punitive damages if the case is dismissed. One who files cynically expecting to be saved by joinder takes the chance that additional petitioners will not sign up and expose themselves to the section 303(i) remedies. Even if the defect in number of petitioners is cured by joinder, and regardless of whether an order for relief is entered, there is still the possibility of dismissal triggering demands for costs, attorney's fees, and consequential and punitive damages.

### c. *Bond to Indemnify Debtor for Section 303(i) Awards.*

■■■■ The exposure to the section 303(i) remedies can be brought home early to petitioners in an involuntary case. The court can, after notice and a hearing, require a bond to be filed to indemnify the debtor for such amounts as the court may later allow under section 303(i). 11 U.S.C. § 303(e).

The Congress did not mince words about what section 303(e) was intended to accomplish:

> The bonding requirement will discourage frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass the debtor (who may be a competitor of a petitioning creditor) or to put the debtor out of business without good cause (an involuntary petition may put a debtor out of business even if it is without foundation and is later dismissed).

---

type of petitioner who may be targeted by section 303(i):

> The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a

basis for future threats to extract full payment.

S.Rep. No. 95–598, 95th Cong., 1st Sess. 36 (1978); H.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977), U.S.Code Cong. & Admin.News, pp. 5822, 6281.

Thus, one who would play the spoiler in an out-of-court workout may find it to be an expensive game.

H.Rep. No. 95–595, 95th Cong., 1st Sess. at 323 (1977), U.S.Code Cong. & Admin.News 1978, p. 6279.[23]

■■■ A bond can have a sobering effect in a case that is off to a shaky start and that is fraught with controversy about the bona fides of the petitioners. In appropriate circumstances, a bond can even be required of those who join in the petition.

If intervenors are willing to post the type of bond contemplated by section 303(e), a court should be reluctant to deprive them of the opportunity.

#### d. *Estoppel of the Offending Creditor.*

■■■ Another alternative is to impose equitable principles to estop the misbehaving single petitioner from being counted as a petitioning creditor. It would then be necessary to round up three, not two, other creditors to join in the petition.

Although judicial decisions explicitly estopping a petitioner as a response to bad faith conduct are sparse, the availability of estoppel in connection with filing involuntary bankruptcy petitions is entrenched. It is long settled that an entity that transfers or acquires a claim "for the purpose" of launching an involuntary case is disqualified from petitioning. Fed.R.Bankr.P. 1003(a); former Bankr.R. 104(d); *cf.* General Order in Bankruptcy No. 5, 267 U.S. 613 (1925). One's subjective purpose in transferring or acquiring a claim is qualitatively little different from one's subjective purpose in making representations on the petition.

The disingenuous petitioning creditor thus risks not being counted as a petitioner (which would be fatal if only two others were willing to join) while still being exposed to the damage liabilities of a petitioner under section 303(i).

#### e. *Denial of Compensation from Estate.*

■■■ A petitioning creditor's expenses, legal fees, and accounting fees may be paid as a cost of administration. 11 U.S.C. § 503(b). The court has considerable discretion over such matters. The burden of persuasion is on the applicant. A petitioning creditor who cynically misrepresents the number of creditors so as to circumvent the three-petitioner rule has much explaining to do in the course of persuading a court to make such awards.

But, it may be objected, none of the measures heretofore outlined will be of much use against the deceitful petitioner who, under the paradigm assumed here, files a case that really should be an involuntary bankruptcy falsifying the number of creditors in the cynical, albeit correct, expectation that the defect will be cured by subsequent joinder or that the substantive defense of insufficient number of petitioners will be waived. After all, if a sufficient number of creditors join and the case is not dismissed, the cost to the single petitioner who will foot the bill for its own expenses and professional fees becomes nil. The answer lies in Federal Rule of Bankruptcy Procedure 9011 sanctions.

#### f. *Federal Rule of Bankruptcy Procedure 9011.*

■■■ The deceitful petitioning creditor does not get off the hook if the defect is cured and the case is not dismissed. Sanctions under bankruptcy's version of Federal Rule of Civil Procedure 11 are permissible. This applies with greatest force in the cases that really do belong in involuntary bankruptcy, for it is in those cases that section 303(i) remedies do not pose as great a risk to the solitary petitioner who would cynically launch an involuntary case with a falsehood about the number of creditors.

---

**23.** The Senate Committee's language was nearly identical:

> The bonding requirement will discourage frivolous petitions as well as spiteful petitions based on a desire to embarrass the debtor (who may be a competitor of a petitioning

creditor) or to put the debtor out of business without good cause. An involuntary petition may put a debtor out of business even if it is without foundation and is later dismissed.

S.Rep. No. 95–989, 95th Cong., 2d Sess. at 23 (1978), U.S.Code Cong. & Admin.News 1978, p. 5809.

■ Every involuntary bankruptcy petition must be signed by an attorney or, if not represented by counsel, by the petitioner. That signature constitutes a certificate that to the best of the attorney's or petitioner's knowledge, information, and belief formed after reasonable inquiry the petition is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification, or reversal of existing law. If signed in violation of the rule, an appropriate sanction may be imposed. Fed.R.Bankr.P. 9011(a).

■ Signing a petition containing a false representation that the number of creditors is such that three petitioners are not required is plainly a signature in violation of Rule 9011 that may warrant sanctions for the bad faith filing of an involuntary bankruptcy case that is later cured by joinder. *Cf. Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 847 F.2d 597, 599 (9th Cir.1988), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

### 7. Status of the Bar–to–Joinder Doctrine.

The array of new tools since the time of *Navison Shoe* permits courts to craft a surgical response to the problem of the petitioner who lacks good faith without simultaneously punishing innocent creditors by depriving them of their statutory right to join in the petition.

The theoretical underpinnings of the bar-to-joinder doctrine (or good faith doctrine) have never been solid. By its nature, the doctrine transmutes the waivable substantive defense of insufficiency in number of petitioners into a jurisdictional defense. It runs counter to the Supreme Court's rule from *Canute Steamship* and can be implemented only by doing violence to the language of section 303(c).

Its mere existence diverts the attention of litigants and courts from the merits of the central question of whether there should be a bankruptcy case. It invites diversionary tactics, increases administrative expenses that are paid ahead of creditors,[24] and leaves festering an unpredictable appellate issue.

The bankruptcy courts can live without the bar-to-joinder doctrine and still vindicate the integrity of the courts and of the bankruptcy process. Consider the facts from the *Basin Electric* situation. The initial petitioner held a $300,000 claim. The two joining petitioners were owed a total of $296.97. The debtor and creditors holding more than $45 million in claims opposed bankruptcy as not in their interests and not in the debtor's best interest. A section 305 abstention and attendant dismissal would have been appropriate. Similarly, relief might have been denied and the case dismissed after reaching the merits because the alleged debtor was generally paying debts as they come due. Following dismissal, section 303(i) remedies and Rule 9011 sanctions could have been imposed.

Nor are the floodgates of involuntary cases likely to open upon the disappearance of the bar-to-joinder doctrine. Involuntary cases have been uncommon under the Bankruptcy Code despite the liberalized filing requirements. For example, in 1992 in the Eastern District of California 23,736 cases were filed, only 13 of which were involuntary petitions.

I conclude that the rule interposing the first petitioner's good faith as a nonstatutory prerequisite to statutory joinder has been superseded. The Congress has now made plain that a creditor's right to join in the petition is "with the same effect as if such joining creditor were a petitioning creditor." It has authorized costs, attorney's fees, and compensatory and punitive damage awards against unsuccessful petitioners and has licensed bonds to secure such awards to be required up front. And Rule 9011 sanctions are now available, in addition to the inherent powers that the *Navison Shoe* court relied on in 1929.

**24.** Petitioning creditors may be reimbursed actual, necessary expenses, and their professionals awarded reasonable compensation as an expense of administration. 11 U.S.C. §§ 303(b)(3)(A) and (b)(4). Professionals may share compensation with cooperating professionals. 11 U.S.C. § 504(b)(2).

Since the rule has lost its vitality, decisions enforcing it are no longer persuasive. I am not persuaded by those cases and decline to apply them. In fact, the time has come for a decent burial of the bad faith bar-to-joinder doctrine.

It is not permissible to deprive eligible creditors of their statutory right to join in the petition and then to dismiss for insufficiency in number of petitioners merely because of the misbehavior of the first creditor to petition.