FILED

NOV 7 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    CC-18-1301-TaFS |
| QDOS, INC., | Bk. No.    8:18-bk-11997-MW |
| Debtor. | |
| MATTHEW HAYDEN; FELICE TERRIGNO; JIM MADDOX; CARL WIESE, as trustee for the Wiese Family Trust dated as of October 31, 2013, | |
| Appellants, | |
| v. | OPINION |
| QDOS, INC., | |
| Appellee. | |

Argued and Submitted on September 26, 2019
at Pasadena, California

Filed – November 7, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances:     Patrick Costello of Vectis Law Group argued for appellants; Damian Capozzola of The Law Offices of Damian D. Capozzola argued for appellee.

Before: TAYLOR, FARIS, and SPRAKER, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

## INTRODUCTION

Matthew Hayden, Felice Terrigno, Jim Maddox, and the Wiese Family Trust ("Petitioning Creditors") sought to place QDOS, Inc. ("QDOS") into an involuntary chapter 11 proceeding.[1] QDOS sought dismissal through a Civil Rule 12(b)(6) motion based on the assertion that none of the Petitioning Creditors were qualified to file the involuntary petition and, thus, the numerosity requirement of 11 U.S.C. § 303(b) was not met. The bankruptcy court recognized that the issue could not be resolved through a dismissal motion or other summary adjudication and held a trial. And because it determined that Mr. Terrigno was an investor, not a creditor, and because Mr. Maddox failed to appear, it agreed with QDOS and dismissed the petition.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Petitioning Creditors appeal. They do not dispute the disqualification of Mr. Terrigno. Nor do they adequately dispute the bankruptcy court's conclusion that Mr. Maddox failed to satisfy his burden of proof that he qualified as a petitioning creditor. All that said, we conclude that the bankruptcy court erred.

Under controlling Ninth Circuit law and the facts of this case, all creditors had the right to consider whether to join in the involuntary petition. But the bankruptcy court did not require QDOS to file an answer and the list of creditors required by Rule 1003(b) once it determined that triable issues existed. And it neither required Civil Rule 26 disclosures nor permitted discovery that would have otherwise allowed the Petitioning Creditors to give the required notice to creditors. The record reflects that QDOS's alleged 40 to 50 creditors had no reasonable opportunity to join in the involuntary petition. Dismissal based solely on an insufficiency in the number of petitioning creditors, thus, was error.

Therefore, we REVERSE and REMAND for further proceedings.

**FACTS**

In May 2018, Carl Wiese (as trustee of the Wiese Family Trust dated as of October 31, 2013), Matthew Hayden, and Felice Terrigno filed an involuntary chapter 11 petition against QDOS.[2] On the petition, they stated

---

[2] We exercise our discretion to take judicial notice of documents electronically

(continued...)

3

that each of their claims was for a loan.

QDOS moved to dismiss and requested § 303(i) damages; in the alternative, it sought abstention under § 305. It did not dispute the petition's allegation that it was not paying its debts as they came due; it focused solely on Mr. Terrigno and alleged that he did not hold a qualifying claim because he was an investor. It asserted that it had 12 or more claimholders, and, thus, the involuntary petition was not filed by three creditors as required by § 303(b).

Petitioning creditors opposed the motion. Among other things, they argued that the grounds for dismissal relied on disputed facts which could not be resolved on a Civil Rule 12(b)(6) motion to dismiss.

Two days before the hearing, the bankruptcy court issued a tentative ruling granting the motion because Mr. Terrigno was not a qualifying petitioner and, as a result, there were less than three qualifying petitioning creditors. It concluded that a Rule 1003(b) list was unnecessary because QDOS filed a motion instead of an answer.

But then Mr. Maddox joined the involuntary petition; the bankruptcy court set a trial for two days later and directed each petitioning creditor to appear personally or risk removal from the list of petitioning creditors.

---

[2](...continued)
filed in the bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

The next day, Petitioning Creditors' counsel filed a document stating that they were unable to appear on less than 48 hours notice for a variety of reasons. So, the bankruptcy court continued the trial. Its order limited the time for additional joinders to the petition to the following three weeks.

Six business days later, Petitioning Creditors filed an ex parte request for a telephonic conference on discovery matters because QDOS was unwilling to negotiate a workable document production schedule and refused to file a Rule 1003(b) list. QDOS opposed the ex parte request, and the bankruptcy court thereafter entered an order striking it.

An additional delay in the hearing occurred. And the bankruptcy court altered the consequences of a failure to appear at the hearing from being struck from the list of petitioning creditors to the striking of the non-appearing petitioning creditor's declaration.

At the eventual trial, Mr. Maddox did not appear.

The bankruptcy court then entered a combined memorandum decision and order. It found that QDOS had more than 12 creditors for § 303(b)(1) purposes. It concluded that Mr. Terrigno was not a qualifying petitioning creditor because he was an equity holder.[3] Next, it concluded

---

[3] QDOS also argued that the Wiese Family Trust and Mr. Hayden were not appropriate petitioning creditors because it disputed that payment on their claims was required at the time of the involuntary petition. The bankruptcy court disagreed; it preliminarily determined that because liability and the amount owed were not in question, the Wiese Family Trust and Mr. Hayden qualified as petitioning creditors. But

(continued...)

5

that Mr. Maddox was not a qualifying petitioning creditor for two reasons: first, his claim was subject to a partial bona fide dispute; and second, he failed to appear at the hearing as ordered and, as a result, failed to meet his burden of proof that he was a qualifying petitioning creditor.

Petitioning Creditors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158(a)(3).

## ISSUE

Did the bankruptcy court err when it dismissed the involuntary petition?

## STANDARD OF REVIEW

We review de novo whether a particular procedure satisfies due process. *Owens-Corning Fiberglass Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1445 (9th Cir. 1985); *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000).

We review the bankruptcy court's conclusions of law de novo and its

---

[3](...continued)
it also allowed for additional briefing. QDOS filed a document that agreed with the bankruptcy court's analysis but raised another issue; it argued that because these entities had the right to convert their claims to stock, they were contingent creditors and, thus, disqualified as petitioning creditors. The bankruptcy court has not decided this issue, and QDOS does not advance arguments related to the qualifications of the Wiese Family Trust and Mr. Hayden on appeal. Because resolution of this issue is irrelevant given the basis of our decision, we do not further consider this point.

conclusions of fact for clear error. *Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir. 2002).

## DISCUSSION

The Code overhauled the standards for involuntary bankruptcy as they existed under the former Bankruptcy Act of 1898; it relaxed them and allowed an involuntary bankruptcy at an earlier point in an entity's economic decline. *In re Kidwell*, 158 B.R. 203, 212–13 (Bankr. E.D. Cal. 1993). At the same time, it allowed for monetary remedies that counterbalanced this new liberality. *Id.* at 213. The Rules then established the procedures that a bankruptcy court must follow in balancing the important concerns extant when a party seeks the involuntary bankruptcy of an unwilling debtor. In sum, they require a speedy resolution and a full complement of due process.

### A.    The law governing involuntary petitions.

Section 303 authorizes the filing of an involuntary petition against a corporation. 11 U.S.C. § 303(a). When the petition is not contested, the bankruptcy court enters an order for relief, and the bankruptcy case proceeds. 11 U.S.C. § 303(h). But corporations can resist the involuntary petition, and the Code provides for standards and procedures that govern the resulting decisional process.

**The Code requires that the involuntary debtor be in financial distress and that a sufficient number of undisputed creditors request**

7

**involuntary relief.** When an involuntary petition is contested, the petitioning creditors must show that the involuntary debtor is in actual financial distress; they may meet this requirement by establishing that the involuntary debtor is not paying its undisputed debts as they come due. 11 U.S.C. § 303(h)(1).[4] Petitioning creditors must also show that there is sufficient desire for an involuntary bankruptcy on the part of undisputed creditors; in a case with fewer than 12 creditors, a single qualified creditor suffices, but, where the debtor has a larger creditor body, three qualified creditors must petition for involuntary relief. 11 U.S.C. § 303(b)(1), (2). Petitioning creditors bear the burden of proof on both of these issues. *Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546, 548 (9th Cir. 1998).

**Joinder can remedy a deficiency in the number of petitioning creditors; and all creditors have the right to consider joinder where the involuntary debtor is in economic distress.** Where there are fewer than the three required petitioning creditors, the Code and Rules allow for Civil Rule 24(a)(1) joinder. 11 U.S.C. § 303(c); Fed. R. Bankr. P. 1018. Thus, joinder may remedy a defect in the number of petitioning creditors.

In deciding the issue before it, whether joinder could cure even a tainted initial petition, the *Kidwell* court emphasized that such joinder was

---

[4] Financial distress also may be demonstrated where, within the 120 days previous, a custodian was appointed for substantially all of the debtor's assets. 11 U.S.C. § 303(h)(2). No one argues that this section applies here.

a matter of right. 158 B.R. at 211. It further noted the importance of the right to join given that an involuntary petition may provide significant benefit to all creditors. *See id.* at 212. We agree; where an entity is in true economic distress, an involuntary filing may stop the race to the state courthouse and the dismemberment of a debtor through involuntary liens, level the playing field among unsecured creditors, and otherwise appropriately aid creditors.[5] Thus, the *Kidwell* court found that it is not permissible to deprive eligible creditors of their statutory right to join in the petition and then to dismiss for insufficiency in number of petitioners, even if an initial petitioning creditor misbehaved. *Id.* at 220.

The *Kidwell* court made a compelling case for a requirement that all claimholders receive an opportunity to consider supporting an involuntary petition when the debtor is in financial distress even if there initially are too few petitioning creditors. And in *Vortex Fishing Systems*, the Ninth Circuit agreed.

Vortex Fishing objected to an involuntary petition; it disputed the sufficiency in number of qualified petitioning creditors and also disputed

---

[5] QDOS's request for abstention as an alternative to dismissal of the involuntary petition evidences its fundamental misunderstanding of the purpose of a proper involuntary petition. It argued that because state court litigation was pending in connection with the initial Petitioning Creditors' claims, the involuntary bankruptcy was unnecessary and improper. But an involuntary filing does not necessarily remove the litigation from state court; the bankruptcy court may elect to allow the claim to be liquidated there. Instead, an involuntary case can help to achieve appropriate bankruptcy purposes. Reorganization or orderly liquidation may follow.

that it was in economic distress. 277 F.3d at 1065, 1070–71. So, pending trial on both disputed issues, the bankruptcy court ordered it to submit a list of its creditors to the bankruptcy court, and the parties agreed that the list could not be released without a court order. *Id.* at 1070. The petitioning creditors did not ask for pre-trial release of the list. *Id.* At trial, the bankruptcy court found that the number of then-existing petitioning creditors was insufficient, but it also continued with the trial and determined that Vortex Fishing was generally paying its debts as they came due. *Id.* at 1063. It then dismissed the involuntary petition. *Id.*

On appeal, the petitioning creditors argued, based on Rule 1003(b), that the bankruptcy court should have notified all creditors of the involuntary petition, afforded them an opportunity to join, and only then dismissed the involuntary case. *Id.* at 1070. The Ninth Circuit rejected this argument.

It noted that generally when an alleged debtor answers a petition filed by fewer than three qualifying petitioners, asserts the § 303(b)(1) three-petitioning creditors requirement, and alleges that it has twelve or more creditors, the bankruptcy court "must assure that other creditors have a 'reasonable opportunity' to exercise their § 303(c) statutory power to join as petitioners . . . ." *Id.* at 1071. But the Ninth Circuit concluded:

> We cannot say, in the face of Rule 1013(a) and of the omission
> of the appellants to ask that the creditor list be released, that the
> Bankruptcy Court abused its discretion when it proceeded to

> determine the merits of the contested involuntary petition—i.e. whether Vortex was generally paying its debts as they came due—without requiring specific notification of other creditors.

*Id.* at 1071–72.

*Vortex Fishing*, thus, underscores that all creditors must have a *reasonable opportunity* to join in an involuntary petition.[6] It was unnecessary there only because, in a consolidated hearing, the bankruptcy court correctly found that the involuntary debtor was not in financial distress; joinder, thus, would have been a meaningless endeavor.

**The decisional process in relation to a contested involuntary petition must be prompt but also consistent with Rule 1018 and the Civil Rules it incorporates.** While the standards for allowance of an involuntary petition are clear, the procedure for making a qualification determination is more meandering.

---

[6] To that extent, § 303(j) and Rule 1017 are enlightening. Section 303(j) governs dismissal of an involuntary petition and requires notice to all creditors when dismissal follows petitioner motion, or petitioner and debtor consent, or is based on want of prosecution. 11 U.S.C. § 303(j). Rule 1017 provides that such dismissal cannot occur before a hearing and notice to all creditors pursuant to a list provided by the debtor or other knowledgeable entity. Fed. R. Bankr. P. 1017(a). The First Circuit BAP concluded in an unpublished decision that "Rule 1017 applies in the context of a motion to dismiss an involuntary petition for failure to obtain the requisite number of petitioning creditors." *Banco Popular de Puerto Rico v. Colon (In re Colon)*, BAP No. PR 07-053, 2008 WL 8664760, at *7 (1st Cir. BAP Nov. 21, 2008). As a result, § 303(j) and Rule 1017 supported its conclusion that a bankruptcy court erred when it dismissed an involuntary petition on an insufficient number of creditor's ground without "at least giving all creditors notice and the opportunity for a hearing." *Id.* at *8.

**An involuntary debtor may initially contest the involuntary petition through a Civil Rule 12(b)(6) motion, but where a trial is required for resolution it must answer and file the list required by Rule 1003(b).** Rule 1011 provides that the debtor may contest an involuntary petition, and it expressly allows the alleged involuntary debtor to file a Civil Rule 12 motion before answering. Fed. R. Bankr. P. 1011(a), (b), and (c). Thus, Civil Rule 12(b)(6) applies in a contested involuntary situation just as it does generally; the motion challenges the sufficiency of the allegations in the involuntary petition and "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). The court accepts factual allegations as true but disregards legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). It then determines if the remaining factual allegations, construed in the light most favorable to the non-moving party's favor, state a facially plausible claim for relief. *Id.* at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

In many cases, a bankruptcy court will not be able to dismiss an involuntary case solely on a motion to dismiss. If the petitioning creditors plausibly allege that they have met the standards, the motion must fail, and

12

the involuntary debtor must answer.[7]

When an involuntary debtor files a Civil Rule 12(b)(6) motion in connection with a contested involuntary bankruptcy, Rule 1011 extends the time for the answer as permitted in Civil Rule 12(a). Fed. R. Bankr. P. 1011(c). Civil Rule 12(a) provides that where a court denies a Civil Rule 12(b) motion or postpones its determination until trial, the answer must be filed within 14 days of the court's action. Fed. R. Civ. P. 12(a)(4)(A). So, once a trial is required to resolve issues in a contested involuntary proceeding, the involuntary debtor must answer within 14 days.

And, if the debtor asserts that it has more than 12 creditors in its answer, it must comply with Rule 1003(b) and concurrently file the required creditor list. Fed. R. Bankr. P. 1003(b). Rule 1003(b) serves two purposes. It implements, in part, § 303(c)'s joinder provisions. *In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1071. And it provides the mechanism by which an alleged debtor substantiates its assertion that it has more than 12 qualifying creditors and returns the burden to petitioning creditors. *In re Clignett*, 567 B.R. 583, 587 (Bankr. C.D. Cal. 2017) ("[A] debtor cannot merely state that [it] has more than twelve creditors in [its] motion to

---

[7] Rule 1018 also allows for summary judgment. But just as in ordinary civil litigation, the court may not grant summary judgment if genuine disputes of material fact exist or further discovery is warranted.

dismiss.").

In summary, if resolution of a contested involuntary proceeding requires a trial, there is no procedural path that allows the alleged involuntary debtor to leap over the requirement that it answer and, if appropriate given its answer, file the creditor list mandated by Rule 1003(b). The mere fact that the involuntary debtor initiated its opposition through a Civil Rule 12(b)(6) motion delays, but does not invariably negate, the requirement of answer and creditor list.

**The requirement that contested involuntary petitions be resolved quickly must be read in tandem with the fact that Civil Rule 26 governs the pre-trial process and that discovery is available under Civil Rules 7028 through 7037.** Rule 1013(a) directs bankruptcy courts to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." Fed. R. Bankr. P. 1013(a). The "earliest practicable time" is when the bankruptcy court has "sufficient information to resolve the conflict" before it. *Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 779 F.2d 471, 475 (9th Cir. 1985). Often the bankruptcy court will acquire this information at trial.

Where trial is required to adjudicate an involuntary petition, Rule 1018 incorporates many procedural Rules and expressly provides that references to adversary proceeding therein include a reference to a

proceeding to contest an involuntary petition. Fed. R. Bankr. P. 1018. Several of the incorporated rules are critical to providing the parties with the information they need to either contest or defend the involuntary petition at trial.

First, Rule 1018 incorporates Rule 7026 which makes the requirements of Civil Rule 26 applicable. *Id.* The initial notice requirements of Civil Rule 26 mandate pre-discovery disclosure of individuals likely to have relevant discoverable information and production of documents supporting claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i) & (ii). Rule 1003(b) works in tandem with this requirement and, because it mandates the creditor list when the involuntary debtor answers, actually accelerates disclosure on this topic. But, even if Rule 1003(b) did not require early submission of the creditor list, there can be no doubt that a list of creditors or the provision of documents containing creditor information would be a required Civil Rule 26(a)(1)(A) disclosure where there is a dispute regarding the number of creditors.

Civil Rule 26 also affects the pace of resolution unless the bankruptcy court is immediately proactive. Rule 1018 allows for all typical discovery as it incorporates Civil Rules 7028 through 7037. Fed. R. Bankr. P. 1018. But such discovery cannot proceed until the parties confer as required by Civil Rule 26(f) or as otherwise agreed by the parties or ordered by the bankruptcy court. Fed. R. Civ. P. 26(d)(1). To achieve the prompt resolution

15

required by Rule 1013(a), the bankruptcy court may establish a discovery schedule that removes the limitations imposed by Civil Rule 26(d)(1).

In short, Rule 1018 makes clear that resolution of a contested involuntary petition should proceed with the discovery and disclosures typical in an adversary proceeding, but Rule 1013(a) mandates that the process move speedily.

**B. The bankruptcy court erred when it imposed § 303(b)(1)'s numerosity requirement, did not require an answer, failed to allow for appropriate discovery, and dismissed the case before allowing appropriate notice and a meaningful opportunity for joinder to all creditors.**

As noted, a Civil Rule 12(b)(6) motion assumes the truth of the allegations in the operative documents, here the involuntary petition. And the involuntary petition in this case does not allege that QDOS had 12 or more qualifying creditors. As a result, § 303(b)(1) does not facially apply and there only needed to be at least one qualifying petitioning creditor. The bankruptcy court correctly recognized that it could not resolve the issues without a trial.

The bankruptcy court, thus, accepted matters extrinsic to the pleadings.[8] In support of its assertion that it had more than 12 creditors,

---

[8] The bankruptcy court stated at one point that it was converting the proceeding to a summary judgment, but we read this as shorthand. The bankruptcy court correctly determined that triable issues existed; thus, trial was required, and summary adjudication was impossible.

QDOS submitted Richard Gillam's, QDOS's CEO, declaration, which baldly stated: "QDOS, Inc. has twelve or more entities or individuals which would be classified as claimholders pursuant to 11 U.S.C. §§ 101(5), 303." At no time did QDOS provide additional information about its creditors. Petitioning Creditors argued to the bankruptcy court and on appeal that this generic statement is insufficient. We agree.

**The bankruptcy court erred when it proceeded to trial without requiring QDOS to answer and file its Rule 1003(b) list.** When Petitioning Creditors asked the bankruptcy court to enforce the Rule 1003(b) requirement, it declined to do so because, it reasoned, Rule 1003(b) applies to answers, not motions to dismiss. This reliance was misplaced.

We acknowledge that some courts find a "gap" in the Rules related to Rule 1003(b). *In re Kidwell,* 158 B.R. at 209. Put simply, an alleged debtor is allowed to raise the defense of a failure to comply with the three-petitioner requirement by either a motion to dismiss under Civil Rule 12 or by an answer, but Rule 1003(b) only facially applies when the defense is raised by answer, not motion. *Id.* The "sensible solution", concluded *Kidwell,* is to apply the same procedure when the defense is raised by motion. *Id.* at 210. If there is a gap, we completely agree with *Kidwell*.

But if Rule 1011 is read in full and one recognizes that Rule 1018 treats contested involuntary petitions as adversary proceedings, there is no gap. Rule 1011 allows the filing of a Civil Rule 12 motion, but Rule 1018

17

incorporates Civil Rule 8 and requires the assertion of defenses through an answer when Civil Rule 12(b)(6) relief is not available. And Rule 1011(c) states that filing a Civil Rule 12 motion extends the time for filing a responsive pleading or answer. Finally, Civil Rule 12(a)(4)(A) provides that the answer is due 14 days after the court denies a Civil Rule 12(b)(6) motion or postpones disposition until after trial.

So here, once the bankruptcy court implicitly denied QDOS's Civil Rule 12(b)(6) motion and actually postponed decision until trial, QDOS was required to answer within 14 days and to accompany its answer with the list required by Rule 1003(b) as it asserted that it had more than 12 creditors.[9]

**The bankruptcy court erred when it proceeded to trial and dismissed the involuntary petition without allowing Petitioning Creditors a reasonable opportunity for discovery.** The bankruptcy court denied Petitioning Creditors any reasonable opportunity for discovery. First, discovery is generally inappropriate while a Civil Rule 12(b)(6) motion is pending. At some point, Petitioning Creditors informally

---

[9] And, again, QDOS was also required to provide Civil Rule 26(a)(1) initial disclosures even before receiving a discovery request. As these disclosures require the name and contact information for all parties with discoverable information and identification of all documents supporting all claims—here that more than 12 creditors existed—it is impossible to assume that QDOS's compliance with these rules would not have identified its creditors before trial if QDOS acted as required by Rule 1018. Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii).

18

attempted to confer with QDOS to obtain discovery; this conferral is required by Civil Rule 26(d)(1). QDOS was not cooperative. But the bankruptcy court penalized the Petitioning Creditors—it erroneously asserted that discovery should have commenced before it took any action on the pending Civil Rule 12(b)(6) motion, and it declined a request for a telephonic discovery conference six business days after it set the matter for trial. The bankruptcy court never relieved the parties from the requirements of Civil Rule 26(d)(1) or otherwise regulated discovery. And it limited the time for joinder in the petition to three weeks following its implicit denial of the motion to dismiss and its conclusion that a trial was necessary. The Petitioning Creditors could not obtain discovery allowing them to solicit joinders before the deadline for joinder passed unless the bankruptcy court shortened time; but it declined their requests for assistance in obtaining discovery.

We also acknowledge that in some regards the errors in relation to discovery may be harmless. The Petitioning Creditors dispute that QDOS has more than 12 creditors, but we have evidence in the record of 11 creditors exclusive of Mr. Terrigno and Mr. Maddox.[10] It seems likely that more exist. And QDOS should have provided the critical information as to

_____

[10] Five creditors other than the Petitioning Creditors filed proofs of claim, and the Petitioning Creditors requested judicial notice of another four recent judgments against QDOS.

the identity of creditors with the required answer or as an initial disclosure. Here the failure to allow discovery as allowed and conditioned by Rule 1018 merely compounded an existing problem. Petitioning Creditors could not remedy these defects through the discovery allowed by Rule 1018.

We acknowledge that the bankruptcy court correctly emphasized Rule 1013(a)'s requirement that bankruptcy courts decide the merits of a contested petition at the earliest practicable time. But Rule 1013(a) must be read in concert with Rule 1018. Rule 1013(a)'s expeditious trial requirement cannot negate Rule 1018 on the grounds that there is no time for discovery.

**The bankruptcy court erred when it did not allow all creditors a meaningful opportunity to join in the involuntary petition.** In this case, the bankruptcy court did not provide for reasonable notice to all of QDOS's creditors and, thus, it denied them their statutory right to join in the involuntary petition. The bankruptcy court intimated, at one point, that other creditors had a "reasonable opportunity" to join because the petition had been pending for more than five weeks on a public docket. The mere pendency of a bankruptcy petition, however, is not sufficient notice to creditors. *In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1071 ("[Rule 1003(b)], which functions to provide an opportunity to moot a defense of insufficiency in the number of petitioners, is needed because all creditors do not necessarily receive notice of an involuntary case until there is an order for relief adjudicating the merits of the petition in favor of the

petitioning creditors.").

And while the bankruptcy court allowed Petitioning Creditors a limited opportunity to solicit additional creditors after it set the matter for hearing,[11] Petitioning Creditors had no list of creditors to solicit. Again, they had no Rule 1003(b) list, no initial disclosures, and no reasonable opportunity to conduct discovery. As a result, we conclude that the bankruptcy court erred when it dismissed the involuntary petition based on a § 303(b)(1) infirmity without affording other creditors an opportunity to join the involuntary petition through Rule 1003(b) notice or Petitioning Creditor solicitation.

*Vortex Fishing Systems, Inc.* does not stand for a contrary result. First, the alleged debtor filed a sealed list of creditors but the petitioning creditors never sought access to it and only raised Rule 1003(b) on appeal. Here, Petitioning Creditors have consistently sought access to a list of creditors or discovery on this topic. Second, the *Vortex Fishing* bankruptcy court determined the *merits* of the contested petition and concluded that Vortex Fishing *was* paying its debts as they came due. And the Ninth Circuit affirmed that finding. As a result, it was immaterial whether there was a sufficient number of petitioning creditors because, even if there were,

---

[11] The temporal limitation on the time for joinder (three additional weeks) also raises an issue. By statute, creditors can join an involuntary petition at any time before "the case is dismissed or relief is ordered." 11 U.S.C. § 303(c).

entry of an order for relief would have been inappropriate. 11 U.S.C. § 303(h)(1). Here, the bankruptcy court made no findings about whether QDOS was paying its debts as they came due; QDOS effectively admitted that it was not.[12] Thus, it deprived creditors of the joinder right mandated by *Vortex Fishing*.

The only creditor information that Petitioning Creditors had as to the QDOS creditor body came from a declaration that came too late for solicitation and named no one, trial testimony that asserted that it had 40 to 50 creditors but did not name them, and information obtainable from the claims docket and litigation databases showing judgments against QDOS. Both Rule 1003(b) and Ninth Circuit authority require more, especially given that QDOS never argued that it was paying its undisputed debts as they came due.

---

[12] QDOS never disputed this point in its Civil Rule 12(b)(6) motion and when questioned on appeal side-stepped inquiry by saying that other creditors were working with it. Petitioning Creditors allege financial distress, and the claims docket in the involuntary case supports this conclusion. A few creditors found the case and filed claims; almost all evidence that QDOS was not regularly paying its debts. The IRS and Employment Development Department filed substantial claims for unpaid and delinquent tax obligations; these claims evidenced interest accruals, penalties, and tax liens. In the EDD's case, they alarmingly were filed on account of unpaid employee withholdings. Another claim evidenced a judgment and lien from 2017. AT&T filed a claim that evidenced arrearages, including some more than 90 days past due. And even more dispositive of a broad-based failure to pay debts as they come due and financial distress is a February 22, 2018 email from the QDOS principal that is attached to the Wiese Family Trust proof of claim. *See* Claim No. 6 at 13–15. The Petitioning Creditors also requested judicial notice of several recent judgments against QDOS.

**C.    The bankruptcy court did not err in concluding that Mr. Maddox was not entitled to be a petitioning creditor at that time.**

The bankruptcy court concluded that Mr. Terrigno and Mr. Maddox did not qualify as petitioning creditors. On appeal, Petitioning Creditors only discuss Mr. Maddox's disqualification.

To be a petitioning creditor, an entity must hold a claim that is not contingent "as to liability or the subject of a bona fide dispute as to liability or amount . . . ." 11 U.S.C. § 303(b)(1). The bankruptcy court concluded that Mr. Maddox did not qualify as a petitioning creditor for two reasons: his claim was subject to a bona fide dispute as to the amount of the claim, and he did not appear in person at the trial. We start, and end, with the latter.[13]

---

[13] The former reason is an unsettled area of law. Pre-BAPCPA, the Ninth Circuit had held that the undisputed portion of a debt could qualify under § 303(b)(1) as not subject to a bona fide dispute. *Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 926 (9th Cir. 2004). But in 2005 Congress amended § 303 and added the phrase "as to liability or amount" after "bona fide dispute." *In re Honolulu Affordable Hous. Partners, LLC,* No. 15-00146, 2015 WL 2203473, at *2 (Bankr. D. Haw. May 7, 2015) (Faris, J.). Some courts have found that the 2005 amendments overruled the Ninth Circuit's decisions. *E.g., id.*; *see Mont. Dep't of Revenue v. Blixseth*, 581 B.R. 882, 898 (D. Nev. 2017) (citing cases). Two circuit courts have agreed with this line of reasoning. *Mont. Dep't of Revenue*, 581 B.R. at 898-89. But other bankruptcy courts (and *Collier*) have concluded otherwise. *Id.* at 899–900; 2 Collier on Bankruptcy ¶ 303.11[2] (Richard Levin & Henry J. Sommer eds. 16th ed. 2019).

Although neither we nor the Ninth Circuit have decided the matter, the Ninth Circuit heard oral argument on this issue and took the matter under submission on August 26, 2019. *See Mont. Dep't of Revnue v. Blixseth*, Case No. 18-15064, Dkt. No. 47

(continued...)

23

Petitioning Creditors raise a variety of arguments on appeal. But, crucially, they conceded at oral argument that the record contains no explanation for Mr. Maddox's failure to appear. He just did not show up.

The bankruptcy court had the right to control the proceedings before it. QDOS disputed that Mr. Maddox properly qualified as a petitioning creditor; it had the right to cross-examine him. And, the bankruptcy court's amended scheduling order was clear about the consequences for non-appearance: the bankruptcy court would strike any and all declarations signed by that petitioning creditor. At issue, in the main, was whether Mr. Maddox held an undisputed claim. And the dispute centered on whether his loan was usurious. We acknowledge that Mr. Maddox filed a proof of claim that temporarily, and far from definitively, waived disputed interest. But the bankruptcy court and QDOS had every right to question him on this point. Thus, the bankruptcy court concluded that Mr. Maddox had not carried his burden of proof that he was a qualifying petitioning creditor. The bankruptcy court did not err in so deciding.[14]

---

(...continued)
(submitting appeal after oral argument on August 26, 2019). Because the bankruptcy court excluded Mr. Maddox's claim for an alternate reason, and we affirm on that ground, we need not resolve this well-ventilated question.

[14] We leave to the bankruptcy court's discretion, on remand, whether Mr. Maddox may revive his participation in the involuntary proceedings by, for instance, appearing at future hearings to testify or by affirmatively and absolutely

(continued...)

## CONCLUSION

Based on the foregoing, we REVERSE and REMAND for further proceedings.

---

(...continued)

waiving the disputed portions of his claim. *See* 2 Collier on Bankruptcy ¶ 303.11[2] ("Of course, as a practical matter, the prudent creditor will take the suggestion loudly whispered by some courts and simply assert the *un*disputed, *non*-contingent portion of its claim." (footnotes omitted)). Unless, of course, in the interim, the Ninth Circuit determines that he need not do so.